918

S. M. GADDIS, Plaintiff,

v.

GREAT NORTHERN RAILWAY COM-
PANY, Northern Pacific Railway Com-
pany, Southern Pacific Company, Spo-
kane, Portland & Seattle Railway Co.,
and Union Pacific Railroad Company,
Defendants.

Rudie WILHELM, Plaintiff,

v.

GREAT NORTHERN RAILWAY COM-
PANY, Northern Pacific Railway Com-
pany, Southern Pacific Company, Spo-
kane, Portland & Seattle Railway Co.,
and Union Pacific Railroad Company,
Defendants.

Civ. Nos. 9683, 9684.

United States District Court
D. Oregon.

Dec. 18, 1959.

Norman L. Easley, Seitz, Easley &
Whipple, Portland, Or., for plaintiff.

M. B. Strayer, Hart, Rockwood,
Davies, Biggs & Strayer, Oglesby H.
Young, Koerner, Young, McColloch &
Dezendorf, Roy F. Shields, Maguire,
Shields, Morrison, Bailey & Kester, Port-
land, Or., for defendants.

SOLOMON, Chief Judge.

These cases, consolidated for trial, are
now before the court on defendants' mo-
tions for summary judgments.

S. M. Gaddis and Rudie Wilhelm each
filed an action for damages against the
defendants, a group of Western rail-
roads, claiming malicious interference
with contractual rights. Each plaintiff
claimed special, general and punitive
damages totaling approximately two mil-
lion dollars, by reason of the fact that
the defendant railroads appeared before
the Interstate Commerce Commission
and protested the merger of two motor
carriers.

From the detailed joint pre-trial order,
which the parties agreed superseded the
pleadings, it appeared that on and prior
to April 4, 1956, plaintiffs owned the
stock of Hunt Transfer Company, a mo-
tor carrier operating over irregular
routes in the States of Washington, Ore-
gon, Idaho, California, Utah and Mon-
tana. Hunt was engaged in the business
of and certificated to transport household

goods and new and used store and office furniture and fixtures as a common carrier in such states.

For some time prior to 1956, Consolidated Freightways, a large motor carrier operating over regular routes throughout the West and Midwest, embarked upon a program of further expansion in order to create a national single carrier system. As part of this program, Consolidated on April 4, 1956, entered into a contract with plaintiffs to purchase all of the Hunt stock, subject however to the necessary approvals from the state and federal regulatory bodies. Thereafter, applications were filed with the Interstate Commerce Commission to approve the sale. The defendants and other railroads filed a protest and answer to this application, and pursued their objections through a series of hearings and appeals. Consolidated and Hunt were uniformly successful in these hearings, and final approval of the sale was granted in December, 1957. The sale and transfer were consummated shortly thereafter.

The pre-trial order specifically states that these "are actions at law for the recovery of damages for claimed malicious interference with contractual rights." Plaintiffs in substance contend that the defendant railroads were not parties in interest to the acquisition proceedings because they were not competitors of Hunt and could not be affected by the proposed stock acquisition. Plaintiffs further contend that the defendants were motivated by a desire "to thwart the expansion of Consolidated". It appears from the voluminous stipulations and exhibits made a part of the pre-trial order that although the railroads do not pack household goods and store and office furniture and fixtures, each of them transports a substantial volume of these same items in the territories served by both Consolidated and Hunt. Even though railroads do not pack these items, they are nonetheless competitors for the transportation of such traffic.

We find that the proposed acquisition of Hunt by Consolidated, taken in the context of Consolidated's overall plan, posed a potential threat to the railroads' competitive situation, qualified the railroads as parties in interest and justified their participation in the hearings in connection with such acquisition. As parties in interest it was immaterial whether they were motivated by public spirit or by self-interest. They were privileged to appear for the very purpose of which plaintiffs complain, "to thwart the further expansion of Consolidated".

Defendants' motions for summary judgments are hereby granted.